| | |
|---|---|
| THE BETTER BROADVIEW PARTY; JUDY BROWN-MARINO; JOHN EALEY; TARA BREWER; DIANE R. LITTLE, | |
| Plaintiffs, | No. 15 C 2445 |
| v. | Judge Thomas M. Durkin |
| GARNET J. WALTERS, individually and in his capacity as Clerk for the Village of Broadview; PHILIP M. FORNARO & ASSOCIATES LTD., d/b/a, FORNARO LAW; PHILIP M. FORNARO, individually and in his capacity as Attorney for the Village of Broadview; MARK SCARLATO, individually and in his capacity as Attorneys for the Village of Broadview; DAVID ORR, in his capacity as the Clerk of Cook County, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

The Better Broadview Party (the "Party") is an established political party within the Village of Broadview, Illinois (the "Village"). The Party and four of its members—Judy Brown-Marino, John Ealey, Tara Brewer, and Diane Little—allege that Defendants acted to prevent Ealey, Brewer, and Little from appearing on the ballot for an election of Village trustees, in violation of state law (Count III) and the Fourteenth Amendment (Counts IV and V). *See* R. 1-1.[1] Defendants have moved to

---

[1] Plaintiffs amended their complaint on April 30, 2015 to add additional defendants and a sixth count. *See* R. 14. The Court addressed those additional issues by

dismiss Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). R. 26. For the following reasons, Defendants' motion is denied.

## Legal Standard

For purposes of a motion to dismiss under Rule 12(b)(1) the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiffs favor. *See Scanlan v. Eisenberg,* 669 F.3d 838, 841 (7th Cir. 2012). "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raise[d] the jurisdictional challenge . . . ." *Craig v. Ontario Corp.,* 543 F.3d 872, 876 (7th Cir. 2008).

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will

denying Plaintiffs' motion for a temporary restraining order with respect to Count VI on May 1, 2015. *See* R. 18; R. 21. In light of that decision, Plaintiffs agreed that the original complaint filed on March 20, 2015 in the state court and subsequently removed to this Court, *see* R. 1-1, should be the operative complaint going forward. *See* R. 26-1. Additionally, Counts I and II sought injunctive relief that the Court granted on March 25, 2015. *See* R. 11.

not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Background

Plaintiffs allege that Defendants are their political rivals in the Village. *See* R. 1-1 at 13 (¶ 36). Plaintiffs also allege that Defendants misused their power and authority to attempt to prevent Plaintiffs from ensuring that Ealey, Brewer, and Little appeared on the ballot for the April 2015 "consolidated election"[2] for four Village trustee seats. *See* R. 1-1.

Plaintiffs filed nominating papers for Brown-Marino, Ealey, Brewer, and Little with defendant Walters, the Clerk of the Village, on January 28, 2015. R. 1-1 at 10 (¶ 28). Clerk Walters certified a ballot that included Brown-Marino because she was an incumbent, but did not include Ealey, Brewer, and Little. *Id.* at 5 (¶ 16).

As an incumbent Village trustee, Brown-Marino asked Clerk Walters why he had omitted Ealey, Brewer, and Little from the ballot, and learned that the Village's outside counsel—defendants Scarlato and Fornaro—advised Clerk Walters that

---

[2] Illinois holds "consolidated elections" in odd years, and "general elections" in even years. *See* 10 ILCS 5/2A-1.1.

Plaintiffs' nominating papers were filed too early. *Id.* at 7-8 (¶¶ 21-22). Plaintiffs allege, to the contrary, that their filing was timely pursuant to 10 ILCS 5/7-61, and according to the calendar published by the Illinois State Board of Elections for 2015. *Id.* ¶¶ at 4 (10-12). Plaintiffs also contend that Clerk Walters "has a non-discretionary duty to certify the names of all candidates who filed nomination papers in apparent conformity with the Election Code," citing 10 ILCS 5/10-15 and 10-8. *Id.* at 6 (¶ 17).

Plaintiffs concede, however, that 10 ILCS 5/7-61—the statute they allege supports the timeliness of their filing—is ambiguous with respect to its application to "consolidated elections" as opposed to "general elections." *Id.* at 8 (¶ 25). Plaintiffs assumed that Defendants were interpreting the statute in such a way as to prohibit filing of nominating papers prior to the date of the primary election on February 24, 2015. *Id.* at 8-9 (¶¶ 24, 26). So although Plaintiffs believed that their nominating papers were timely filed on January 28, 2015 and that Defendants had interpreted the statute incorrectly, Plaintiffs again filed nominating papers on February 27, 2015 in an attempt to comply with their perception of Defendants' interpretation of the statute. *Id.* at 9 (¶ 26).

Clerk Walters did not certify a ballot including Ealey, Brewer, and Little based on the February 27 nominating papers. *Id.* at 9-10 (¶¶ 27-28). Plaintiffs allege that Scarlato told Brown-Marino that he and Fornaro advised Clerk Walters not to certify Ealey, Brewer, and Little because the February 27 nominating papers were filed too late because the deadline was December 22, 2014. *Id.* at 11 (¶ 30).

Scarlato and Fornaro's contention that Ealey's, Brewer's, and Little's February 27 nominating papers were filed late was also expressed in a formal objection to their certification made on March 6, 2015.[3] R. 1-1 at 9-10 (¶ 27); R. 10-1. The objection cites the "2015 Candidates Handbook" to support Scarlato and Fornaro's opinion that the filing deadline for nomination papers was actually December 22, 2014, and thus, Plaintiffs' filing was late. *See* R. 10-1 at 2 (¶ 4). The objection also contends that the statute Plaintiffs relied on to argue that their nomination filings were timely—10 ILCS 5/7-61—is inapplicable to "consolidated elections" like the April 2015 election. *Id.* at 3 (¶ 15). Plaintiffs allege that this objection should not have prevented Clerk Walters from certifying a new ballot including Ealey, Brewer, and Little, because their names should have been included on the ballot noting that an objection to their candidacies was pending, pursuant to 10 ILCS 5/10-15(7). R. 1-1 at 9-10 (¶ 27). Plaintiffs also maintain that, regardless of whether Defendants are correct about the deadline, Illinois law does not give Clerk Walters the discretion to make such a determination. *Id.*

Plaintiffs allege that Defendants' interpretation of the election law to Plaintiffs' detriment was motived by their political rivalry. *Id.* at 13 (¶ 36). Plaintiffs allege that two years ago in 2013, the prior Village clerk declined to certify one of Plaintiffs' political opponent's nomination papers as untimely. *Id.* at 13 (¶ 35). Fornaro, as counsel to the Village, wrote a letter to the prior Village clerk demanding that the clerk certify the potential candidate to the ballot and detailing

---

[3] The objection was filed by Judy Abraham. *See* R. 10-1. Plaintiffs do not mention her in the complaint.

the circumstances of the dispute. *Id.* at 64-69. Fornaro wrote that the potential candidate attempted to file nomination papers on the last day of the filing period, but the Village clerk had impermissibly limited her office hours such that the potential candidate was unable to file his nomination papers. *Id.* Fornaro argued that the Village clerk did not have the discretion to decide that the nomination papers were untimely under such circumstances. *Id.* Plaintiffs allege that Fornaro's advice to the Village clerk in 2013 conflicts with the advice he gave Clerk Walters. *Id.* at 13 (¶ 35).

Plaintiffs also allege that even if the filing of the objection was a legitimate reason for Clerk Walters to decline to certify their names to the ballot, Defendants acted illegally to delay a hearing on the objection. *Id.* at 10 (¶ 28). Plaintiffs allege that under 10 ILCS 5/10-10 the hearing "shall not be less than 3 not more than 5 days after the receipt of the certificate of nomination or nomination papers and the objector's petition." *Id.* Plaintiffs allege that contrary to 10 ILCS 5/10-10 Fornaro and Scarlato instructed the chairman of the electoral board that would rule on the objection to delay scheduling a hearing on the objection until March 23, 2015. *Id.*

As it turned out, the objection to Ealey, Brewer, and Little being certified was withdrawn on March 23, 2015, the day the hearing was scheduled. *See* R. 10 at 2. Clerk Walters then certified them to be on the ballot the next day. That same day, however, at a hearing before this Court on Plaintiffs' motion for a temporary restraining order, Counsel for Cook County Clerk Orr represented that, despite Ealey, Brewer, and Little having been certified by Clerk Walters, Clerk Orr would

not add them to the ballot because the relevant deadlines had passed. The Court entered an injunction ordering Clerk Orr to include Ealey, Brewer, and Little on the ballot for the April 2015 election. *See* R. 11.

Ealey, Brewer, and Little won election along with Brown-Marino. R. 14 ¶ 47. Defendants argue that the fact that Ealey, Brewer, and Little were eventually included on the ballot and won election moots their claims and deprives them of standing, such that the Court lacks subject matter jurisdiction over their claims. Defendants also argue that Brown-Marino and the Party do not have standing to pursue this action because it is based on alleged harm to Ealey, Brewer, and Little, which only indirectly affected Brown-Marino and the Party. In addition to their arguments regarding the Court's subject matter jurisdiction, Defendants make the following additional arguments in support of their motion to dismiss: the individual defendants have qualified immunity; the *Noerr-Pennington* doctrine protects the Village attorneys from liability; Plaintiffs have failed to state a Due Process right to be on the ballot; Plaintiffs have failed to state an Equal Protection claim; the Village attorneys are not personally responsible for Clerk Walters's actions; Clerk Walters complied with state election law; and Plaintiffs fail to plead *Monell* liability under the "policymaker" theory. As it must, the Court first addresses its subject matter jurisdiction. The Court addresses each of the remaining arguments to the extent it is necessary to address this motion.

**Analysis**

**I.    Subject Matter Jurisdiction**

**A.    Injury**

Defendants argue that Plaintiffs lack standing to challenge Defendants' rejection of the January 28 filing, because Plaintiffs "conceded" the January 28 filing's "invalidity" when they filed new nomination papers on February 27. *See* R. 26 at 6 (arguing that "filing two sets of nomination papers for the same office violates the Election Code"). This argument, however, assumes that Plaintiffs allege two distinct injuries. They do not. Rather, they allege they were injured when Defendants acted to prevent Ealey, Brewer, and Little from appearing on the ballot for the April 2015 election. Defendants' alleged actions in response to both Plaintiffs' January 28 and February 27 filings are aspects of that single, indivisible injury. The Court rejects Defendants' contention that these two events should be analyzed separately for purposes of determining Plaintiffs' standing and the Court's subject matter jurisdiction.

Defendants also argue both that (1) Plaintiffs lack standing because Plaintiffs were eventually certified on the basis of the February 27 filing, and so they have no injury of which to complain; and (2) Defendants also argue that Plaintiffs' claims are moot because they were included on the ballot for the April 2015 election and they have suffered no damages. But Defendants had not certified Ealey, Brewer, and Little for the ballot when Plaintiffs filed this case. *See Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970) ("Although the aldermanic election that inspired

8

this action has already taken place, that event did not moot this case."). And action by this Court, in response to Plaintiffs' filing a complaint, was required in order to ensure that Ealey, Brewer, and Little were included on the ballot. Defendants argument that Plaintiffs lack an injury is without merit.

Furthermore, the fact that Plaintiffs received the injunctive relief (Counts I and II) they sought in filing this case does not deprive the Court of subject matter jurisdiction over Plaintiffs' action because Plaintiffs also seek damages in Counts IV and V. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 370 n.1 (1987) ("The action is not moot, however. In addition to requesting injunctive and declaratory relief, the complaint sought damages . . . ."); *Markadonatos v. Village of Woodridge*, 760 F.3d 545, 546 (7th Cir. 2014) ("Although the ordinance has been repealed and the repeal moots the plaintiff's request for declaratory and injunctive relief, it occurred after he paid his $30 and so does not nullify his claim for damages."); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[The plaintiff] has been paroled, but because he seeks damages the case is not moot."). Plaintiffs have alleged that Defendants' pre-complaint conduct violated Plaintiffs' Due Process and Equal Protection rights, and the Seventh Circuit "long ago decided that, at a minimum, a plaintiff who proves a constitutional violation is entitled to nominal damages." *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003); *see also Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("Because the right to procedural due process is 'absolute' . . . nominal damages [are available for denial of that right] without proof of actual injury."); *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014) (there is a "general rule

that a plaintiff who successfully proves a constitutional violation is entitled to at least a nominal award"). Moreover, Plaintiffs seek punitive damages, and "nothing prevents an award of punitive damages for constitutional violations [even] when compensatory damages are not available." *Calhoun*, 319 F.3d at 942. Therefore, the Court has subject matter over this case.

## B.      Prudential Standing

Defendants also argue that "the Party and Brown-Marino lack prudential standing because the legal rights and interests asserted in this case related only to [Ealey, Brewer, and Little]." R. 26 at 7. Defendants cite *Edgewood Manor Apartment Homes, LLC v. RSUI Indemnity Co.*, to argue that Plaintiffs "cannot rest their claims to relief on the legal rights of third parties." R. 26 at 7 (citing *Edgewood*, 733 F.3d 761, 771 (7th Cir. 2013)). That may be true, but Defendants cite no authority to support their argument that this accurately characterizes the Party's and Brown-Marino's interests in this case. To the contrary, as Plaintiffs point out, 10 ILCS 5/7-61 contemplates the scenario alleged to be at issue in this case in which no individual from a certain party won nomination for a particular office through a primary election, but the party retains the right to make nominations for that office for the general election ballot. In such a circumstance, nomination "[v]acancies shall be filled by the officers of a local municipal or township political party." *Id.* Plaintiffs allege that Brown-Marino is such an officer of the Party. Since the statute gives Brown-Marino and the Party the right to make the nominations, and they allege that Defendants thwarted their attempt to

exercise that right, Brown-Marino and the Party suffered an injury. Thus, they have standing to bring these claims along with Ealey, Brewer, and Little.

## II.   Due Process

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. This clause both (1) "requires compliance with fair procedures when the government deprives an individual of certain 'liberty' or 'property' interests," *see Kerry v. Din*, 135 S. Ct. 2128, 2142 (2015) (Breyer, J. dissenting) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)), and (2) "limits the extent to which government can substantively regulate certain 'fundamental' rights." *See Kerry*, 135 S. Ct. at 2142 (Breyer, J. dissenting) (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

Plaintiffs allege that Defendants impermissibly burdened their access to the ballot, which implicates the fundamental right of freedom of association. *See* R. 1-1 at (¶ 74) ("The right of a party or an individual to be placed on a ballot is entitled to due process protection and intertwined with the rights of voters."); *id.* (¶ 76) ("Defendant Walters established a course of action that deprived the Plaintiffs[] of their right to ballot access by refusing or otherwise failing to certify the Plaintiffs' names to the Cook County Clerk."). The Supreme Court and the Seventh Circuit have recognized that ballot access implicates the right of association and is a fundamental right guaranteed by the Fourteenth Amendment. *See Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) ("Restrictions on access to the ballot burden two distinct and fundamental rights, 'the right of

individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively."); *Briscoe*, 435 F.2d at 1053 ("It is by now well established that the concept of 'liberty' protected against state impairment by the Due Process Clause of the Fourteenth Amendment includes the freedoms of speech and association and the right to petition for redress of grievances. . . . Access to official election ballots represents an integral element in effective exercise and implementation of those activities."). Plaintiffs allege that Defendants are state actors who prevented them from appearing on the ballot when they improperly applied Illinois law regarding nomination deadlines and objections. Plaintiffs allege they were only able to secure places on the ballot by recourse to filing this complaint. Such allegations state a claim for a substantive due process violation.

Defendants argue that Plaintiffs' Due Process claim should be dismissed because the "the freedom to associate is a core right protected by the First Amendment . . . and '[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing these claims." R. 30 at 10 (quoting *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994)). Contrary to Defendants argument, however, courts frequently discuss the right of ballot access and the right of association as being derived from, or protected by, both the First and Fourteenth Amendments. *See Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) ("it is beyond debate that freedom

to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech," and "ballot access restrictions . . . affect[] . . . the interwoven strands of 'liberty'"); *see also Corrigan v. City of Newaygo*, 55 F.3d 1211, 1217 (6th Cir. 1995) ("The Supreme Court has stated that a single balancing test should be used in ballot access cases to evaluate freedom of association, equal protection and due process interest."). Moreover, the standard of review applied to ballot access claims under the First Amendment, and the standard applied to alleged violations of substantive due process, both require a court to "weigh" the extent of the restrictions on the plaintiff's rights against the magnitude of the state's interest in imposing such a burden. *Compare Lee v. Keith*, 463 F.3d 763, 768 (7th Cir. 2006) ("Ballot access restrictions are evaluated under a flexible standard that weighs the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights. . . . Restrictions that 'severely' burden the exercise of constitutional rights must be 'narrowly drawn to advance a state interest of compelling importance.'"), *with Brown v. City of Michigan City*, 462 F.3d 720, 732 (7th Cir. 2006) ("the Fourteenth Amendment forbids the government to infringe . . . fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored

to serve a compelling state interest"). In any event, the Seventh Circuit has frequently held that "plaintiffs are not required to plead legal theories," *Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 909 (7th Cir. 2012), and has applied that principle to allegations sufficient to state a claim for violation of the Fourteenth Amendment. *Id.* (holding that even though the plaintiff described his claim as a violation of Due Process that "does not necessarily preclude a valid assertion of an equal protection violation."). Thus, the Court rejects Defendants argument that Plaintiffs' decision to caption their claim for violation of their ballot access rights under the Due Process Clause rather than the First Amendment is a reason to dismiss that claim.

## III. Equal Protection

Plaintiffs allege that Defendants violated the Equal Protection Clause when they intentionally misapplied Illinois law regarding nomination deadlines and objections in order to keep Plaintiffs off the ballot due to Plaintiffs' political affiliation. "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). "To prove demonstrate discriminatory effect . . . plaintiffs are required to show . . . . that [defendants] treated them differently than other similarly situated individuals." *Chavez*, 251 F.3d at 636. "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that a decision maker singled out a particular group for disparate treatment and selected

his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996); *see also Snowden v. Hughes*, 321 U.S. 1, 8 (1944) ("administration by state officers os a state statute fair on its fact, resulting in unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination"). When a defendant's discriminatory action is alleged to have burdened a fundamental right, as Plaintiffs allege here with respect to their right to ballot access and right of association, the action is subject to strict scrutiny, meaning that the discriminatory action is permissible only if it is narrowly tailored to address a compelling state interest. *See Socialist Workers Party*, 440 U.S. at 184 ("Restrictions on access to the ballot burden two distinct and fundamental rights . . . . When such vital individual rights are at stake, a State must establish that its classification is necessary to serve a compelling interest."); *see also Foucha v. Louisiana*, 504 U.S. 71, 115 (1992) ("Certain substantive rights we have recognized as 'fundamental'; legislation trenching upon these is subjected to 'strict scrutiny,' and generally will be invalidated unless the State demonstrates a compelling interest and narrow tailoring.").

In the context of Plaintiffs' alleged political rivalry with Defendants, both discriminatory purpose and effect can be plausibly inferred from the irrationality of Defendants' alleged actions. Defendants did not accept Plaintiffs' nomination papers filed on January 28 allegedly because they were filed too early. But when Plaintiffs

attempted to comply with their perception of Defendants' understanding of the relevant deadline by refiling their nomination papers on February 27, Defendants again refused to certify Plaintiffs to the ballot. This time, however, Defendants allegedly asserted that the filing deadline was actually December 22 of the previous year and Plaintiffs' filing was too late.

Additionally, despite Defendants' determination that Plaintiffs should not be certified to the ballot because their February 27 filing was too late, Defendants accepted an objection to Plaintiffs' nomination nine days later. Based on Plaintiffs' theory of the case, if it was possible to file an objection to Plaintiffs' nomination, Clerk Walters must have accepted their nomination papers such that he should have certified their names for the ballot well before the objection was ever filed. If he had not accepted their nomination then there should not have been any nomination to which an objection could have been filed. And further, even though an objection was filed against their nominations, Plaintiffs allege that Clerk Walters should have still certified their names to the ballot with the phrase "objection pending" appended to their names.

Furthermore, Defendants allegedly failed to comply with the statutory deadline for holding a hearing regarding the objection to Plaintiffs' nominations. The statute Plaintiffs cite provides that a hearing should have been scheduled within five days of the objection's filing. Plaintiffs allege, however, that Defendants ensured that the hearing was not scheduled to take place until March 24, which was less than two weeks prior to the election on April 7. Although Clerk Walters

eventually agreed to certify Plaintiffs' names to the ballot once the objection was withdrawn the day of the scheduled hearing, counsel for Cook County Clerk Orr represented to the Court that Plaintiffs would not be added to the ballot absent a court order because the relevant deadlines had passed.

Defendants' alleged actions are sufficiently illogical that it is plausible to infer that Defendants would not have taken these actions in the normal course with respect to similarly situated potential candidates, and that Defendants acted as they did because they sought to harm Plaintiffs politically. These alleged factual circumstances also state a plausible claim that Defendants intentionally delayed addressing the objection to Plaintiffs' nominations in violation of Illinois law in order to prevent them from appearing on the ballot.

Defendants' only argument that Plaintiffs' allegations are insufficient to state a claim is that Plaintiffs have failed to allege discriminatory effect because they have failed to allege that they were treated differently than similarly situated individuals. Plaintiffs argue that they have alleged discriminatory effect by alleging that Defendants ensured that a potential political candidate from their own party was included on the ballot in 2013 even though that candidate's nomination papers were filed late. Defendants, however, argue that Plaintiffs are not similarly situated to the potential candidate from 2013 because that candidate's nomination papers were late by minutes, whereas Defendants determined that Plaintiffs' nomination papers were days late.

The Court agrees that Plaintiffs are not similarly situated to the candidate from 2013, but holds that this is not fatal to Plaintiffs' Equal Protection claim. According to the letter Fornaro sent to the Village clerk advising her to certify the potential candidate to the ballot in 2013 (which Plaintiffs attached to the complaint) the potential candidate had attempted to file his nomination on the last day of the filing period. The 2013 dispute arose because the Village clerk unusually limited her office hours that day with insufficient notice, and Fornaro advised her that the limitation of hours was impermissible and could not serve to invalidate the potential candidate's nomination. In his letter, Fornaro justified his advice to the Village clerk with reference to *Welch v. Educational Officers Electoral Bd. for Proviso High Sch. Dist. 209*, in which the court held that a potential candidate's nomination papers that were time stamped minutes after the official close of business on the last day of the filing period were nonetheless timely. 750 N.E.2d 222 (Ill. App. Ct. 1st Dist. 2001). The court held that once the election office accepted and stamped the papers, the election official did not have discretion to decline to certify the nomination to the ballot as untimely, because a timestamp minutes late did not make it "apparent" from the face of the nomination papers that the filing failed to "conform" to the statutory requirements. *Id.* at 232. The court also held, by contrast, that a nomination's nonconformity *is* "apparent" from the face of the filing when it is days late, and election officials responsible for ballot certification have the responsibility and discretion to reject such nomination papers as untimely. *Id.* at 229.

The distinction drawn by the court in *Welch*, and relied upon by Fornaro in 2013, shows that the potential candidate from 2013 was not similarly situated to Ealey, Brewer, and Little. The validity of the 2013 candidate's nomination turned on the clerk's discretion to apply her office hours to the filing deadline, whereas in this case Defendants contend that Plaintiffs' nomination papers were filed days outside the filing period. The 2013 candidate cannot serve as a basis for Plaintiffs' allegation that Fornaro discriminated against them. And it certainly cannot form a basis for such a claim against to Scarlato or Clerk Walters since Plaintiffs have not alleged that they were involved in the 2013 dispute.

Nevertheless, a plaintiff is not required to specifically allege similarly situated individuals in order to state an Equal Protection claim. *See Swearingen-El v. Cook County Sheriff's Dep't*, 416 F. Supp. 2d 612, 617 (N.D. Ill. Jan. 12, 2006) ("[The plaintiff] does not need to specifically identify similarly situated individuals in his complaint." (citing *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005))); *see also Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015) ("But nonetheless, we have repeatedly confirmed that plaintiffs alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints."). Further, even though the specific comparator Plaintiffs cite does not support their Equal Protection claim, the totality of Plaintiffs' allegations plausibly suggests that Defendants intentionally singled out Plaintiffs to prevent their appearance on the ballot. The irrationality of Defendants' alleged justification for withholding certification implies that it was specifically devised to harm

Plaintiffs. Defendants' decisions to accept an objection to Plaintiffs' nomination even though it had not been certified, and then delay a hearing on that objection in apparent contradiction of the statutorily mandated schedule, are equally irrational and appear designed to prevent Plaintiffs from appearing on the ballot. These allegations are sufficient to state a claim for an Equal Protection violation.

## IV.     Qualified Immunity

Defendants argue that even if Plaintiffs have plausibly stated claims for Due Process and Equal Protection violations, Defendants are entitled to qualified immunity. "Qualified immunity shields government officials from liability under Section 1983 for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gruenberg v. Gempler*, 697 F.3d 573, 578 (7th Cir. 2012). "In deciding whether a right is 'clearly established,' courts ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Doe v. Village of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015). "A plaintiff bears the burden of establishing that the constitutional right was clearly established." *Id.* "Although the plaintiff need not point to a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "In other words, the plaintiff must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." *Id.*

The Court has cited a number of cases in the foregoing discussion of Plaintiffs' Due Process and Equal Protection claims that establish that the right to ballot access is derived from the fundamental right to association protected by the Fourteenth Amendment. *See Socialist Workers Party*, 440 U.S. at 184; *Briscoe*, 435 F.2d at 1053. These cases show that the right is clearly established, and as discussed, Plaintiffs have plausibly stated a claim the Defendants violated that right. Thus, the Court cannot find as a matter of law that Defendants are entitled to quailed immunity at this stage of the case.

Defendants argue that Plaintiffs cannot demonstrate that their right is clearly established because they concede that the statute they rely on to allege that Defendants imposed improper nomination deadlines is ambiguous. *See* R. 26 at 8. Defendants contend that if "reasonable attorneys can dispute the statute . . . the Plaintiffs' rights arising from that statute are not 'clearly established'." *Id.* at 9. But Plaintiffs do not merely allege that Defendants incorrectly applied the relevant statutory deadlines. Rather, Plaintiffs allege that Defendants' proffered justification for that decision is entirely illogical. The allegation that Defendants initially stated that Plaintiffs' filing was early on January 28, and later asserted that the deadline was actually prior to that date, plausibly alleges that Defendants were not acting under a good faith interpretation of the statute, but were intentionally hoping to stymie Plaintiffs' nominations. Moreover, Defendants do not even attempt to justify their delay in certifying Plaintiffs to the ballot after Plaintiffs refiled their nomination papers on February 27. Even if Defendants' initial rejection of Plaintiffs'

January 28 filing was justified, Defendants' alleged actions after February 27 are sufficient to deny them qualified immunity at this stage.[4]

## V.    *Noerr-Pennington* Doctrine

Fornaro and Scarlato also argue that they are entitled to immunity under the *Noerr-Pennington* doctrine. That "doctrine protects litigation, lobbying, and speech," *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007), because the First Amendment protects the right "to petition the Government for a redress of grievances." *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 837 (7th Cir. 2011). Contrary to Defendants' contention, Plaintiffs do not allege that Fornaro and Scarlato were "petitioning" the Village to act in a certain way with respect to Plaintiffs' nomination. Rather, Fornaro and Scarlato were acting in their capacity as counsel to the Village. Thus, *Noerr-Pennington* immunity is inapplicable here.

## VI.    State Law

Defendants also argue Plaintiffs' claims should be dismissed because Defendants correctly applied the law to determine that Plaintiffs' January 28 filing was too early. It is unnecessary for the Court to determine whether Defendants are correct because Plaintiffs also allege that Defendants told them that the relevant deadline was December 22, and then acted to delay a hearing on the objection to

---

[4] Defendants also argue that Clerk Walters is entitled to qualified immunity because he acted on legal advice under "extraordinary circumstances." *See Davis v. Zirkelbach*, 149 F.3d 614, 620 (7th Cir. 1998). Such a defense, however, "ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* It may be that Clerk Walters will be able to develop facts to support this theory of immunity. But it is not available to him on the basis of Plaintiffs' allegations.

their nominations. Defendants do not attempt to argue that these actions conformed to the relevant statutes. Thus, even if Plaintiffs' January 28 filing was early, Plaintiffs' allegations still plausibly state claims that Defendants' actions were intended to ensure that Plaintiffs' names did not reach the ballot in violation of state law and the Fourteenth Amendment.

## VII. *Monell* Liability

Defendants contend that Plaintiffs have not sufficiently alleged *Monell* liability. Plaintiffs, however, have sued Clerk Walters in both his personal and official capacity. By suing Clerk Walters in his official capacity, they have effectively sued the Village. *See Snyder*, 745 F.3d at 246 ("[The plaintiff] sued the County Defendants in their official capacities under 42 U.S.C. § 1983, which is essentially another way of suing the county-affiliated entity they represent."). In support of this claim, Plaintiffs have alleged that Clerk Walters is a policymaker for purposes of determining whether nomination papers are in "apparent conformity" with the statute. *See Valentino v. Village of South Chicago Heights,* 575 F.3d 664, 676 (7th Cir. 2009) (the official in question does not have to be "a policymaker on all matters for the [entity], but . . . [only] a policymaker in [the] particular area, or on [the] particular issue."). This is sufficient to state a claim against him in his official capacity.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss, R. 26, is denied. The parties should discuss and agree upon an appropriate discovery cut-off date. A

status hearing is set for February 5, 2016 to set a discovery cut-off date or refer the case for a settlement conference.

ENTERED

Honorable Thomas M. Durkin
United States District Judge

Dated: February 1, 2016